UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO. 3:09-Civ-1190-J-32 HTS

MICHAEL PHAN,

    Plaintiff,

v.

SANTANDER CONSUMER USA, INC.
COGGIN AUTOMOTIVE CORP.

    Defendants.
_____/

**SANTANDER CONSUMER USA, INC.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND
<u>MOTION TO STRIKE DEMAND FOR JURY</u>**

    Defendant, Santander Consumer USA, Inc. ("SCUSA"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Plaintiff's Complaint and Demand for Jury Trial ("Complaint"), which asserts claims against SCUSA under the Truth In Lending Act ("TILA") and the Florida Deceptive and Unfair Trade Practice Act ("FDUPTA"), because it fails to state a claim upon which relief can be granted. To the extent that Plaintiff alleges his claims for fraud and breach of contract against SCUSA, despite not praying for relief against SCUSA, these claims must also be dismissed on the same basis. In the alternative, SCUSA moves to strike Plaintiff's demand for a jury.

## I.
## INTRODUCTION AND BACKGROUND

    SCUSA is leading company in the automotive finance sector. Plaintiff alleges that he purchased an automobile from Defendant Coggin Automotive Group Corp.

("Coggin"), for which he received financing from SCUSA. Based upon this transaction and the Retail Purchase Agreement that Plaintiff attaches as the evidence of it, Plaintiff alleges four claims, two of which are asserted against SCUSA: (1) violation of TILA against Defendants; (2) fraudulent misrepresentation against Coggin; (3) breach of contract against Coggin; and (4) violations of FDUPTA against Defendants. *See* Complaint ¶¶ 43-73. Despite not alleging his fraud and breach of contract claims against SCUSA, Plaintiff alleges that "Santander is subject to all of Mr. Phan [sic] claims and defenses against Coggin, pursuant to 16 C.F.R. 433.2, arising out of the above retail installment sale agreement." *See id.* ¶¶ 55, 62.

Plaintiff fails to state a claim against SCUSA under TILA because the document upon which Plaintiff appears to base his claims (for which SCUSA is neither a party nor an assignee) does not represent a "credit transaction" under the Act, and the contract that actually does reflect the parties' credit arrangement (which Plaintiff directly refers to in his Complaint, but neglected to attach, and is further referenced in the exhibit to the Complaint) contains all required TILA disclosures. Plaintiff does not pray for relief against SCUSA for fraud or breach of contract. But if these claims are purportedly alleged against SCUSA regardless of that deficiency, Plaintiff fails to state claims for which relief can be granted because the claims are based upon unsupported assertions of legal conclusions, and are utterly devoid of factual allegations related to SCUSA. Finally, Plaintiff fails to state a claim against SCUSA under FDUPTA because he fails to allege any particular facts regarding SCUSA that could plausibly constitute a violation of FDUPTA. All of the allegedly deceptive or unfair trade practices identified in Plaintiff's Complaint, which are not

incorporated by reference into the FDUPTA claim itself, relate to Coggin and not to SCUSA. Accordingly, Plaintiff's Complaint should be dismissed in its entirety against SCUSA.

## II.
## LEGAL DISCUSSION

A.     **Legal Standard**

To survive a motion to dismiss, a complaint must plead sufficient facts to state a claim of relief that is "plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 554, 570 (2007). The Court explained that "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). While a complaint challenged by a motion to dismiss does not need detailed factual allegations, a plaintiff is obligated to provide factual allegations that "raise a right to relief above the speculative level," and further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555.

Indeed, a court need accept as true only the plaintiff's well-pled factual contentions, not its conclusory allegations, and specifically, a court may not consider conclusions which are either **unsupported by or inconsistent with the factual allegations contained in the complaint or its exhibits**. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Burroughs v. Broadspire*, 2009 WL 997013, *1 (11th Cir. Apr. 15, 2009) (citation omitted) ("In evaluating a motion to dismiss, the court should disregard the legal conclusions drawn from the facts, as well as conclusory allegations and

unwarranted deductions of fact, to determine whether the complaint states a claim upon which relief can be granted."); *Gooley v. Mobil Oil Corp.*, 851 F. 2d 513. 514 (1st Cir. 1998); (citation omitted); *U.S. v. AVX Corp.*, 962 F. 2d 108, 115 (1st Cir. 1992) (citations and quotations omitted).

The court may look beyond the factual allegations of the complaint and consider documents that are central to the plaintiff's claim and are undisputed, but are not attached to the complaint, without converting the motion to dismiss into one for summary judgment." *See Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005); *Horsely v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir. 2002). A document is central to the dispute if it lies at the heart of the alleged claim. *Day*, 400 F. 3d at 1276. A document is undisputed if its authenticity is not challenged. *Id.* Here, the Court should consider the Installment Sale Contract referred to in Paragraphs 15 and 45 of Plaintiff's Complaint, and further referenced in Plaintiff's exhibit, because it is central to his claims.

**B.     Plaintiff's Complaint Should be Dismissed with Prejudice.**

   **1.     Plaintiff fails to allege any facts supporting his TILA claim against SCUSA.**

Plaintiff alleges six specific violations of TILA: (1) failure to make required disclosures prior to a "credit transaction," as that term is defined and used in the Act; (2) failure to conspicuously make a required disclosure under 15 U.S.C. § 1632(a) and 16 C.F.R. § 226.17(a); (3) failure to properly disclose the finance charge; (4) failure to properly disclose the annual percentage rate; (5) failure to properly disclose the total of payments; and (6) failure to properly disclose the total sales price. The document that Plaintiff claims is

missing these disclosures is not identified in Count I of his Complaint, but appears to be the Retail Purchase Agreement he attaches as an exhibit.[1]  *See* Complaint ¶¶ 43-46.

The exhibit Retail Purchase Agreement was not assigned to SCUSA, and is unrelated to the financing of the vehicle.  Plaintiff concedes that he does not have, and therefore does not know the contents of, the Installment Sale Contract that must contain the required disclosures under TILA.  *See* Complaint ¶ ¶ 15, 45.  The disclosures are in the Installment Sale Contract.  But the Retail Purchase Agreement does not need to have the TILA disclosures in it, because it does not reflect a "credit transaction," as required for TILA to apply.

> **a.    The Retail Purchase Agreement does not reflect a "credit transaction" and TILA does not apply to it.**

The exhibit to Plaintiff's Complaint is an incomplete, prior version of the Retail Purchase Agreement for Plaintiff's purchase.  A true, correct, and complete copy of the Retail Purchase Agreement, which is signed by Plaintiff and contains a second page that Plaintiff left off of his exhibit, is attached as Exhibit "A."[2]  Notably, SCUSA is not a party to the Retail Purchase Agreement, and Coggin did not assign its interest in that contract to SCUSA.  For this reason alone, Plaintiff fails to allege a TILA claim against SCUSA for which relief can be granted.  Even if Coggin had assigned the Retail Purchase Agreement,

---

[1]   The Retail Purchase Agreement that applies to the purchase financed by SCUSA (dated January 21, 2008) is not the version Plaintiff attached to his Complaint, which is dated January 12, 2008.  *See infra* Section II.B.1.a and Exhibit "A."

[2]   The first page of the Retail Purchase Agreement, which Plaintiff executed, states: "YOU AGREE THAT THE ADDITIONAL TERMS AND CONDITIONS PRINTED ON THE BACK OF THIS DOCUMENT ARE PART OF THIS AGREEMENT AND THE FRONT AND BACK OF THIS RETAIL PURCHASE AGREEMENT CONTAIN THE ENTIRE AGREEMENT RELATED TO THIS PURCHASE AND NO OTHER AGREEMENTS, UNDERSTANDINGS OR PROMISES WILL BE RECOGNIZED."  *See* Exhibit "A."

and SCUSA was a "holder" of that contract and therefore potentially liable for TILA violations under it, the Retail Purchase Agreement does not reflect a "credit transaction" under TILA, and accordingly does not have to contain the disclosures required by TILA and the regulations promulgated under that Act.  *See* 15 U.S.C. §§ 1602(e) (defining "credit"); 1638 (governing "consumer credit transactions").

TILA applies to credit transactions.  *See* 15 U.S.C. § 1638.  The term "credit" is defined as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer payment." 15 U.S.C. 1602(e).  The Retail Purchase Agreement does not reflect a credit transaction; **it does not grant Plaintiff any right to defer payment of debt.** It merely summarizes some terms of the purchase transaction.  Plaintiff signed the Retail Purchase Agreement in numerous places to reflect his acceptance of particular contract terms.  Above one such signature appears the following:

> THIS IS A CONDITIONAL RETAIL PURCHASE AND SELLER IS ASSISTING WITH FINANCE SOURCING: YOU ACKNOWLEDGE THAT THE SALE OF THE ABOVE DESCRIBED VEHICLE IS NOT FINAL UNTIL YOUR LOAN APPLICATION HAS BEEN APPROVED BY A THIRD PARTY LENDER ACCEPTABLE TO SELLER, **AND A RETAIL INSTALLMENT OR CONSUMER CREDIT SALE CONTRACT HAS BEEN FULLY EXECUTED WITH RESPECT TO THIS TRANSACTION** AND WE HAVE RECEIVED FUNDS FOR THE UNPAID BALANCE FROM THE LENDER. … YOU UNDERSTAND THAT WE DO NOT REPRESENT OR IMPLY THAT YOUR LOAN APPLICATION HAS BEEN APPROVED OR WILL BE APPROVED BY EXECUTING THIS AGREEMENT OR PERMITTING YOU TO REMOVE THE VEHICLE FROM THE PREMISES.

*See* Exhibit "A" (capitalization in original; emphasis added).  Clearly, Plaintiff understood that Coggin (nevermind SCUSA, which is not a party to the Retail Purchase Agreement) was

not extending "credit" pursuant to the Retail Purchase Agreement, and that the contract did not reflect a "credit transaction" under TILA.  *See Henning v. Daniels*, 653 F. 2d 104 (4th Cir. 1981) (security agreement, not "Customer's Order," was document on which seller was required to make disclosures, where extension of credit took place in security agreement). .

Apparently, Coggin uses the Retail Purchase Agreement regardless of whether credit is extended to finance the purchase.  *See* Exhibit "A" at p.2, ¶1(b) ("<u>IF THIS IS A CONDITIONAL RETAIL PURCHASE AND SELLER IS ASSISTING WITH FINANCE SOURCING.</u>  The required finance disclosures will be made to you prior to the time you sign the Retail Installment or Consumer Credit Sale Contract." (emphasis in origina)).  But it is the Installment Sale Contract, not the Retail Purchase Agreement, under which credit is extended.  Therefore, the Installment Sale Contract must contain the TILA disclosures.  And in the case of Plaintiff's purchase, it does.

> **b.     The Court can consider the Installment Sale Contract without converting the motion to dismiss into a motion for summary judgment.**

SCUSA attaches a true and correct copy of Plaintiff's Installment Sale Contract as Exhibit "B."  The Court is free to consider the Installment Sale Contract on a motion to dismiss without converting it to a motion for summary judgment because the document is central to the plaintiff's claim and undisputed.  *See Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005); *Horsely v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir. 2002).  Plaintiff refers to the Installment Sale Contract numerous times in his Complaint, and acknowledges that he is unaware of its contents.  *See* Complaint ¶¶ 15, 45.  The entire basis of Plaintiff's claims against SCUSA is that he was not provided the TILA disclosures at the time of his purchase, which the Installment Sale Contract directly contradicts.

The Installment Sale Contract is further referenced in the Retail Purchase Agreement upon which Plaintiff appears to base his claims, which Plaintiff concedes he executed. He thereby acknowledged that "THE SALE OF THE ABOVE DESCRIBED VEHICLE IS NOT FINAL UNTIL [Plaintiff's] LOAN APPLICATION HAS BEEN APPROVED BY A THIRD PARTY LENDER ACCEPTABLE TO SELLER AND A **RETAIL INSTALLMENT OR CREDIT SALE CONTRACT** HAS BEEN FULLY EXECUTED WITH RESPECT TO THIS TRANSACTION." *See* Complaint, Exhibit "1." (capitalization in original; emphasis added). Moreover, the exhibit Retail Purchase Agreement contains a second page that Plaintiff did not attach, but that the Court must consider in its complete form. *Compare id. with* Exhibit "A." One the second page, the Retail Purchase Agreement explicitly states that "**[t]he required financial disclosures will be made to you prior to the time you sign the Retail Installment or Consumer Credit Sale Contract**." Exhibit "B" (emphasis added). Accordingly, the Installment Sale Contract is central to Plaintiff's claim that he was not provided with TILA disclosures, and it is signed by Plaintiff and cannot be disputed; the Court can consider the Installment Sale Contract on this motion to dismiss.

   c. **Plaintiff was provided and signed his Installment Sale Contract, which contains all of the disclosures required by TILA.**

Plaintiff's Installment Sale Contract contains all of the TILA disclosures upon which Plaintiff alleges his claim:

| Violation of TILA Alleged In Paragraph 46 of Plaintiff's Complaint | Contents of Plaintiff's Installment Sale Contract |
|---|---|
| • By failing to provide the required disclosures prior to consummation of the transactions in violation of the Truth-in-Lending Act, 15 U.S.C. § 1638(b) and Regulation Z § 226.17(b) | • As described below, all of the disclosures are present in the Installment Sales Contract, which Plaintiff signed at the time of the transaction. Directly over Plaintiff's signature, the contract provides in bold text as follows: "You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of the contract … before signing below. You confirm that you received a completely filled in copy when you signed it." |
| • By failing to make the required disclosure clearly and conspicuously in writing in violation of the Truth-in-lending Act, 15 U.S.C. § 1632(a) and Regulation Z § 226.17(a) | • The terms "annual percentage rate" and "finance charge" are conspicuously disclosed in outlined boxes in the section of the Installment Sale Contract entitled "Federal Truth-In-Lending Disclosures." |
| • By failing to disclose as part of the finance charge certain charges imposed by the Santander [sic] payable by the [sic] Phan incidents [sic] to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z § 226.4, thus failing to properly and accurately disclose the correct "amount financed" using the term in violation of the TILA, 15 U.S.C. § 1638(a)(3) and Regulation § 226.18(d) | • First, SCUSA did not "impose" any charges, because it was not an original party to the contract, which was assigned to SCUSA. Second, all items payable by Phan are listed as line items in the section of the Installment Sale Contract entitled "Federal Truth-In-Lending Disclosures," and the Amount Financed is properly and accurately disclosed as $23,416.48[3]. |

---

[3] An Amount Financed is also disclosed in the exhibit Retail Purchase Agreement, contrary to Plaintiff's allegations. *See* Complaint, Exhibit "1."

| | |
|---|---|
| • By failing to properly and accurately disclose the correct "annual percentage rate" using the term in violation of the Truth-in-lending Act, 15 U.S.C. § 1638(a)(4) | • The Annual Percentage Rate is 16.78%, as conspicuously disclosed in the section of the Installment Sale Contract entitled "Federal Truth-In-Lending Disclosures."[4] |
| • By failing to clearly and accurately disclousure [sic] the correct "total of payments" using the term in violation of the Truth-in-lending Act, 15 U.S.C. § 1638(a)(5) | • The Total of Payments is $37,300.32, as disclosed in the section of the Installment Sale Contract entitled "Federal Truth-In-Lending Disclosures." |
| • By failing to properly and accurately disclousure [sic] the correct "total sale price" using the term in violation of the Truth-in-lending Act, 15 U.S.C. § 1638(a)(7) | • The Total Sale Price is $41,100.32, as disclosed in the section of the Installment Sale Contract entitled "Federal Truth-In-Lending Disclosures." |

Accordingly, Plaintiff fails to allege facts that support his TILA claim against SCUSA. Moreover, Plaintiff cannot allege facts in support of that claim, because the Installment Sale Contract contains all of the disclosures required under the Act.

### 2. Plaintiff's claims for fraud and breach of contract are not alleged against SCUSA, and even if they were, they are unsupported by any factual allegations.

Plaintiff appears to assert claims of fraud and breach of contract against Coggin, and not against SCUSA. *See* Complaint, pp. 11, 12 ("Wherefore, Mr. Phan prays for judgment **against Coggin**…. (emphasis added)). All of the allegedly fraudulent misrepresentations were by Coggin, not SCUSA. *See id.* at ¶¶ 47-55. And the breach of contract (presumably the Retail Purchase Agreement, for which SCUSA is not a party) identified in Plaintiff's Complaint is not by SCUSA: "**Coggin breach the contract** by fraudulently increasing the amount being borrowed from Santander by more than the actual

---

[4] The Annual Percentage Rate is also disclosed in the Retail Purchase Agreement, contrary to Plaintiff's allegations. *See* Complaint, Exhibit "1."

invoice and/or the MSRP of the subject vehicle." (emphasis added). Plaintiff's claims for fraud and breach of contract lack any alleged facts that could support a claim against SCUSA for which relief could be granted. The claims fail to meet the pleading standard set by *Twombly* and *Iqbal*. They fail to provide allegations that plausibly suggest SCUSA made fraudulent misrepresentations or breached a contract.

However, in these two claims, Phan alleges that "Santander is subject to all of Mr. Phan [sic] claims and defenses against Coggin, pursuant to 16 C.F.R. 433.2, arising out of the above retail installment sale agreement." *See id.* ¶¶ 55, 62. This allegation is no more than an unsupported legal conclusion, masquerading as an allegation of fact. Accordingly, the Court should ignore this allegation and not accept it as true when conducting its Rule 12(b)(6) analysis. *See Twombly*, 550 U.S. at 550 (Plaintiff must supply grounds for relief that go beyond "labels and conclusions"); *Papasan*, 478 U.S. at 286 (on motion to dismiss, courts are not bound to accept unsupported allegations of legal conclusions as true facts).

The Retail Purchase Agreement is not an installment contract or a "credit transaction," and SCUSA is not the "holder" of the Retail Purchase Agreement, because that contract was not assigned to SCUSA by Coggin. The "Holder Rule" does not apply if SCUSA is not the "holder" of the paper from which Plaintiff's claims purport to arise. Accordingly, even if the Court considers the fraud and breach of contract claims to be asserted against SCUSA despite Plaintiff failing to pray for relief from SCUSA, both claims fail and should be dismissed.

### 3. Plaintiff has not alleged facts supporting his FDUPTA claim against SCUSA.

To assert a claim under FDUPTA against SCUSA, Plaintiff must allege some deceptive or unfair trade practice undertaken **by SCUSA**. But Plaintiff fails to allege **any specific action** by SCUSA in his FDUPTA claim. *See* Complaint ¶¶ 63-73. Plaintiff makes conclusive allegations regarding SCUSA that merely repeat the elements of the claim. *See id.* Under *Twombly*, the Court must ignore such conclusive allegations. *See Twombley*, 550 U.S. at 550 (formulaic recitations of elements of a claim do not pass muster under Rule 12(b)(6)); *Papasan*, 478 U.S. at 286. Mere recitations of the elements of a claim do not make the claim plausible under *Twombly*. Count IV lacks any particularized allegations at all, and the rest of Plaintiff's Complaint only alleges particular unfair or deceptive acts or statements by Coggin and unsupported conclusions of law. *See id.* at ¶¶ 18, 22, 29-37, 39, 47-54, 56-61.[5]

The facts alleged in Plaintiff's Complaint are utterly deficient to support a FDUPTA claim against SCUSA. Accordingly, Count IV of the Complaint must be dismissed against SCUSA.

### C. In the Alternative, the Court Should Strike Plaintiff's Demand for a Jury.

Plaintiff demanded a trial by jury of the claims in his Complaint, but he has waived his right to a jury trial. In fact, Plaintiff waived his right to a jury trial two separate times. First, he waived it by executing the Retail Purchase Agreement upon which he

---

[5] Plaintiff does allege that Coggin represented to Plaintiff that it would obtain a favorable interest rate for Plaintiff "on behalf of itself and as an agent for Phan," but here too the Court should ignore such legal conclusions that are alleged as "facts." Plaintiff alleges no facts to support his conclusive allegation. And SCUSA has a specific contractual relationship with Coggin that expressly provides Coggin is not SCUSA's agent for any purpose.

appears to base his claims.  *See* Exhibit "A," p.1 ("PURCHASER AND DEALER KNOWINGLY AND VOLUNTARILY WAIVE THEIR RIGHT TO A TRIAL BY JURY FOR ALL SUCH CONTROVERSIES AND DISPUTES.  PURCHASER AND DEALER KNOW AND UNDERSTAND THAT THEY ARE GIVING UP THEIR RIGHT TO A TRIAL BY JURY AND THERE SHALL BE NO JURY TRIAL.").

Plaintiff waived his right to a jury a second time when he executed the Installment Sale Contract.  *See* Exhibit "B," p.2 ("EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.").  Plaintiff's claims purport to arise out of the Retail Purchase Agreement, and the Installment Sale Contract is the "credit transaction" that governs the parties' relationship.

There is no question that a party may knowingly and voluntarily waive his right to a jury trial by contract, as Plaintiff has here.  *See Bakrac, Inc. v. Villager Franchise Sys. Inc.*, 164 Fed. Appx. 820, 823 (11th Cir. 2006) (enforcing contractual waiver of jury trial against party who knowingly and voluntarily executed contract); *Collins v. Countrywide Home Loans, Inc.*, 2010 WL 55603, *4 (M.D. Fla. Jan. 5, 2010) (enforcing waiver of jury trial in financing contract).  Federal law applies to the examination of whether a contractual jury trial waiver is enforceable.  *Wachovia Bank v. Longcrier Homes, Inc.*, 2010 WL 320484 (S.D. Fla. Jan. 21, 2010) (citing *Tracinda Corp. v. DaimlerChrysler AG*, 502 F. 3d 212, 222 (3d Cir. 2007)).  In the Eleventh Circuit, courts consider the conspicuousness of the waiver provision, the sophistication of the party challenging the waiver, the parties' relative bargaining power, and whether the terms of the contract were negotiable.  *See Bakrac*, 164 Fed. Appx. at 823-24.  Here, Plaintiff has not challenged the enforceability of his waivers.  If

he does, the Court should find the waivers in the Retail Purchase Agreement and the Installment Sale Contract enforceable. The waivers are not unconscionable, contrary to public policy, or unfair. *See Collins*, 2010 WL 55603, *4. Plaintiff knowingly, willingly, and intelligently waived his right to a jury twice.

The two waivers are both conspicuous, in that each is "present in a separate paragraph, printed in a font that is the same size as the rest of a document, located in the last paragraph of a relatively short document,[6] and worded in clear and unambiguous language." *Collins*, 2010 WL 55603, *5 (citing *Belon v. Litton Loan Servicing, L.P.*, 2006 WL 2061340, *1-2 (M.D. Fla. July 17, 2006)). The waiver in the two-page Retail Purchase Agreement is in capital letters in a section immediately below Plaintiff's signature that is entitled "ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL." *See* Exhibit "A." In the two-page Installment Sale Contract, the waiver appears in a marked-off box at the end of the contract that bears the legend "PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS." *See* Exhibit "B," p.2.

Each jury waiver paragraph is "written clearly in a way that the average person could understand its implications." *Collins*, 2010 WL 55603, *5. And Plaintiff is a sophisticated party who is well-versed in his legal rights as a consumer and a litigant. While there is no record that Plaintiff is a member of the Florida bar, and he filed this action pro se, Plaintiff's email address (michael.p.esq@gmail.com) suggests Plaintiff is a lawyer (or is holding himself out as one). And in the last three years, Plaintiff has filed at least seventeen lawsuits in the Middle District alone, fourteen on his own behalf and three on behalf of his

---

[6] While not in the last paragraph, the waiver in the Retail Purchase Agreement is directly below Plaintiff's signature.

wife, asserting claims under federal and state debt collection laws. Finally, Plaintiff's Complaint concedes that he had equal bargaining power and that the contracts related to the purchase of his vehicle were negotiable; he states that he rejected certain service and maintenance portions of the purchase. *See* Complaint ¶¶ 22, 36. There is no indication that Plaintiff was forced to sign either the Retail Purchase Agreement or the Installment Sale Contract in the forms he received them. *See Collins*, 2010 WL 55603, *5. And a term in a contract that waives a party's right to a jury trial is not unenforceable simply because one party to the contract is an individual and the other is a larger corporation. *Id.* at *6 (citing *Milsap v. Cornerstone Residential Mgmt., Inc.*, 2007 WL 965590 (S.D. Fla. March 28, 2007)). Nothing in Plaintiff's Complain even hints that Plaintiff could not have simply walked away from the deal if he found the waiver unacceptable. *See id.* Accordingly, the waivers were knowing and voluntary, and the Court should strike Plaintiff's demand for trial by jury.

## III.
## CONCLUSION

In sum, Plaintiff does not state a claim upon which relief can be granted under TILA because it fails to allege a claim based upon a "credit transaction," and the document that reflects the parties' credit transaction contains all the necessary disclosures. Plaintiff does not allege his fraud and breach of contract claims against SCUSA, because he does not allege any facts supporting those claims under which SCUSA could be liable. And Plaintiff fails to state a claim under FDUPTA against SCUSA because he fails to allege any particular activities by SCUSA that could constitute a violation of FDUPTA and merely asserts an unsupported (and incorrect) conclusion of law. As such, Plaintiff's Complaint should be

dismissed with prejudice as to SCUSA. In the alternative, if the Complaint is not dismissed in its entirety against SCUSA, the Court should strike Plaintiff's demand for a jury trial because he waived his right to a jury in both the Installment Sale Contract and the Retail Purchase Agreement.

Dated: February 10, 2010    Respectfully submitted,

/s/ John B. Rosenquest IV
Robert M. Brochin
  Florida Bar No. 0319661
  E-mail: rbrochin@morganlewis.com
John B. Rosenquest IV
  Florida Bar No. 048431
  E-mail: jprever@morganlewis.com
Morgan, Lewis & Bockius LLP
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131-2339
Telephone:    305.415.3456
Facsimile:     305.415.3001

*Attorneys for Defendant Santander Consumer USA, Inc*.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2010, I electronically filed the foregoing *Santander Consumer USA, Inc.'s Motion to Dismiss Plaintiff's Complaint and Motion to Strike Demand for Jury* with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being delivered by overnight carrier to Michael Phan, 9401 Osprey Branch Trail, Unit 9, Jacksonville, FL 32257, and by facsimile to Mr. Phan at 904-425-2616, and by email to Mr. Phan at michael.p.esq.@gmail.com.

/s/ John B. Rosenquest IV
John B. Rosenquest IV